IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATRIX SEMICONDUCTOR, | No. C 05-0920 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 29] |
| LSI LOGIC CORPORATION, | |
| Defendant. | |

This matter is before the Court on Plaintiff Matrix Semiconductor's Motion for Preliminary Injunction [Docket No. 29].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby DENIES Plaintiff's Motion for Preliminary Injunction.

## **BACKGROUND**

**A.     Factual Background**

Plaintiff Matrix Semiconductor ("Matrix" or "Plaintiff") is a Delaware corporation in the business of producing goods and services relating to semiconductor memory and the storage of data, voice and video content on semiconductor memory. Compl. ¶ 4. Matrix makes and sells memory chips and cards for a variety of applications, including the storage of music, video and text content in consumer devices. *Id.* Matrix owns the "MATRIX" and "MATRIX MEMORY" trademarks, which it uses in connection with the sale of its semiconductor memory. Declaration of Liza K. Toth I.S.O. Motion for Preliminary Injunction ("Toth Decl.") at ¶ 5. The trademarks are federally registered. Toth Decl. at ¶ 5, Exs. A-C. Matrix has also been using the

service mark MATRIX since July 1999. Declaration of Dan Steere I.S.O. Motion for Preliminary Injunction ("Steere Decl.") at ¶ 2.

Matrix produces a low-cost, high-density secure, one-time-programmable (OTP), non-volatile memory. Declaration of Khari J. Tillery I.S.O. Opp. to Motion for Preliminary Injunction ("Tillery Decl.") at Ex. D. Matrix sells its OTP products as "stand alone memory." Tillery Decl. at Ex. C, ¶ 9.

Defendant LSI Logic Corporation ("LSI" or "Defendant") is a Delaware corporation whose business focuses on the design and production of high-performance semiconductors for consumer, communications, and storage applications that access, interconnect, and store data, voice, and video. Compl. ¶ 5. LSI sells integrated circuits (or "semiconductor chips") to various manufacturers of computer products. Tillery Decl. at Ex. C, ¶ 3. Much of what LSI sells are chips known as Application Specific Integrated Circuits, or "ASICs." *Id*. The chips are tailored to specific customers needs, and therefore the engineering and testing costs can sometimes approach $1 million. *Id.* at ¶4. As a result, ASICs are typically purchased in large volume after careful investigation by engineers working for a particular customer. *Id.* at ¶4. The process can take a year or more. *Id.* at ¶ 4. LSI also has developed a method of streamlining the ASIC-development process which it calls the "RapidChip methodology." *Id.* at ¶5. This methodology allows LSI to customize a chip for significantly less than $1 million, but can still cost a customer between $100,000 and $300,000 in one-time engineering expenses. *Id.* Even using the RapidChip methodology, the process can take four to six months and the customer still relies upon its own engineers to help it make decisions about designing and purchasing the chip. *Id.*

LSI has created the "RapidChip Integrator2," which is a family of RapidChip platforms targeted to the computer-network market. *Id.* at ¶6. Among other things, the RapidChip Integrator2 contains memory, such as Random Access Memory ("RAM"), which allows data to be stored and retrieved. *Id.* The RapidChip Integrator2 also includes "logic gates" which perform specific functions. Declaration of Richard Brossart I.S.O. Opp. to Motion for Preliminary Injunction ("Brossart Decl.") at ¶ 3. The RapidChip Integrator2 platform is optimized for specific functions such as networking. Tillery Decl. at Ex. C, ¶ 10. It would typically be used by a customer making specific products like network routers, network switches, network adapter cards,

servers, and related products. *Id.* Potential RapidChip Integrator2 platform customers include Cisco, Sun Microsystems, and Nortel. *Id.*

LSI uses the term MatrixRAM to describe the RAM component of its RapidChip Integrator2 platform. *Id.* at ¶ 7. RAM (or "random access memory") is a form of data storage in which any piece of information can be independently stored or retrieved. RAM holds its contents temporarily, maintaining data only while the electrical power remains on. RAM consists of memory cells for storing and retrieving information very quickly, and changing its contents very quickly. RAM is essential for complex, high-speed computing and signal processing. Brossart Decl. at ¶ 6. LSI adopted the name MatrixRAM for this component because RAM cells form a two-dimensional "matrix" of rows and columns. Tillery Decl. at Ex. C, ¶ 8. On LSI's website, the company refers to the MatrixRam product as either "Matrix," "Matrix RAM" or "Matrix-RAM." Toth Decl. at Exs. D-F. On February 23, 2005, LSI filed its own trademark application for "MatrixRAM" pursuant to 15 U.S.C. § 1051(b). Toth Decl. ¶¶ 19-20, Ex. 20.

Both LSI and Matrix sell their products to original equipment manufacturers, such as Sony or Nintendo, for end use in the consumer electronics fields. Declaration of Dennis Segers I.S.O. Motion for Preliminary Injunction ("Segers Decl.") at ¶¶ 11, 14. Matrix contends that its product line will eventually expand from one-time programmable memory products into other varieties of memory and circuits because its founders never intended to be limited to one-time programmable memory (OTP) or read-only memory (ROM). Declaration of Thomas H. Lee I.S.O. Motion for Preliminary Injunction at ¶¶ 4-5. Matrix, as a company, has won recognition and awards for its products and technology throughout the past few years and has spent over $12 Million in sales and marking efforts since the first quarter of 2001. Steere Decl. ¶¶ 3 and 16, Exs. A-E.

**B.    Procedural History**

On March 3, 2005, Matrix filed a Complaint against LSI alleging the following causes of action: (1) trademark infringement under 15 U.S.C. § 1114; (2) false claims advertising and unfair competition under 15 U.S.C. § 1125(a); (3) dilution of trademarks under 15 U.S.C. § 1125(c); and (4) equitable accounting.

On March 4, 2005, Matrix filed an application for a temporary restraining order ("TRO") under its first

3

three causes of action. This Court denied Matrix's application for a TRO on March 11, 2005.

On April 12, 2005, Matrix filed the instant Motion for Preliminary Injunction. In its Motion for Preliminary Injunction, Matrix seeks to prohibit LSI from using the registered trademarks MATRIX and MATRIX MEMORY, or the service mark MATRIX, or any other mark of Plaintiff, or any word, symbol, phrase or term similar thereto, including "MATRIX," "MATRIX RAM," "MATRIX-RAM," and "MatrixRAM" alone or displayed on products or in promotional material, advertisements, the internet, business cards, labels, signs, or in any other way, in connection with the advertising, distribution, offering for sale or sale of any product or service not emanating from and authorized by Plaintiff. However, Matrix does not seek to enjoin LSI from its continued use of the word "matrix" to describe rows and columns of components in its integrated circuits.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) and the Lanham Act, 15 U.S.C. § 1116(a), provide that a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 1125(a) of this title." 15 U.S.C. § 1116(a). A party seeking a preliminary injunction must show either (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Ocean Garden, Inc. v. Marktrade Company, Inc.*, 953 F.2d 500, 506 (9th Cir.1991) (quoting *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987)); *see also Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir.1985). Both tests require the moving party to prove a significant threat of irreparable injury. *Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F.Supp. 612, 614 (C.D. Cal. 1996).

4

## DISCUSSION

**A.  Likelihood of Success on the Merits and Possibility of Irreparable Harm**

In order to prevail on either of its first two causes of action, Matrix must show a likelihood of confusion as to the source of LSI's "Matrix RAM." *See Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403-04 (9th Cir. 1997). In trademark infringement actions, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989).

The Ninth Circuit utilizes an eight-factor test (known as the *Sleekcraft* test) to determine likelihood of confusion in trademark infringement cases. The eight factors are as follows: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Dr. Seuss Enterprises*, 109 F.3d at 1404 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). While each of these factors are to be considered in reaching a decision on the issue of likelihood of confusion, "'no mechanistic formula or list can set forth in advance' the variety of elements that comprise the market context from which likelihood of confusion must be determined." *Dr. Seuss Enterprises*, 109 F.3d at 1404 (*quoting* Restatement (Third) of Unfair Competition § 21, comment a (1995)).

### 1.  Strength of the Marks

In the Order denying Plaintiff's TRO application, the Court found that Plaintiff's marks were not strong, but rather were descriptive of the layout of most computer memories. Plaintiff now argues that its marks are sufficiently strong under *Sleekcraft* because they are suggestive, rather than descriptive, marks. Plaintiff also argues that the strength of its marks is demonstrated by the fact that the marks were accepted for the Principal Register by the United States Patent and Trademark Office ("PTO").

"A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses." *Sleekcraft*, 599 F.2d at 349 (citing *National Lead Co. v. Wolfe*, 223 F.2d 195, 199 (9th Cir. 1955)). On the other hand, "[a] descriptive mark tells something about

the product; it will be protected only when secondary meaning is shown." *Id.* (citations omitted). "In between lie suggestive marks which subtly connote something about the products. Although less distinctive than an arbitrary or fanciful mark and therefore a comparatively weak mark, a suggestive mark will be protected without proof of secondary meaning." *Id.* (citation omitted).

As a preliminary matter, the parties dispute the significance of the fact that Plaintiff's marks are federally registered trademarks.[1] Plaintiff relies on 15 U.S.C § 1052[2] to argue that the PTO's willingness to accept the marks for the Principal Register conclusively demonstrates that they are, at the very least, suggestive marks. LSI counters this by asserting that federal registration merely creates a *presumption* of validity, which presumption is soundly rebutted in the instant matter. *See San Juan Products, Inc. V. San Juan Pools, Inc.*, 849 F.2d 468, 474 (10th Cir. 1988). With respect to this issue, the Court agrees with LSI; the fact that Matrix has registered its trademark with the PTO creates a rebuttable presumption of validity, but it does not end the inquiry altogether.

In order to determine the strength of the mark, the Court must examine whether the marks truly rise to the level of suggestiveness or whether they are merely descriptive. Here, LSI has advanced a compelling argument that the marks "MATRIX" and "MATRIX MEMORY" are descriptive. A mark is descriptive if it consists of "words descriptive of the . . . characteristics of an article of trade." *See Estate of P.D. Beckwith, Inc. V. Commissioner of Patents*, 252 U.S. 538, 543 (1920). The words need not "describe all of the properties or functions of the goods . . . [but] it is sufficient if the term describes a significant attribute or idea

---

[1] It should also be noted that Plaintiff's insistence that trademark registration is relevant to the analysis of this *Sleekcraft* factor appears to result from Plaintiff's misreading of *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999). In *Brookfield*, there was a question as to whether the plaintiff was, in fact, the senior user of the trademark. *Id.* at 1046-47 ("To resolve whether [the defendant's] use of 'moviebuff.com' constitutes trademark infringement or unfair competition, we must first determine whether [the plaintiff] has a valid, protectable trademark . . . .") Thus, the *Brookfield* court first needed to establish whether the plaintiff had a protectable trademark before embarking on the *Sleekcraft* analysis. *See, e.g., id.* at 1053 ("Establishing seniority, however, is only half the battle.") That is not the case here. Similarly, the fact that LSI registered the term "MatrixRAM" with the PTO after Matrix had registered its marks only goes to the priority rights of the user, and is not determinative of the strength of the mark.

[2] Section 1052 provides that "No trademark . . . shall be refused . . . unless it . . . consists of a mark which (1) when used on or in connection with the goods of the applicant is merely descriptive or deceptively descriptive of them . . . ." 15 U.S.C. § 1052.

1  about them." *In re Intelligent Instrumentation, Inc.*, 40 U.S.P.Q.2d 1792-93 (1996). In determining
2  whether words are descriptive of a particular product, the Court must consider the sophistication and
3  knowledge of the prospective buyers. *Id.* at 1793.

4      LSI argues that Plaintiff's marks are descriptive because the term "matrix" is commonly used in the
5  industry to describe the structure of digital memory. In fact, the *Microsoft Computer Dictionary* defines a
6  matrix as "an array of circuit elements . . . for performing a specific function." Tillery Decl. at Ex. A. Other
7  technical dictionaries define a matrix as a "memory array used in . . . computers." Tillery Decl. at Ex. B.
8  Additionally, the term "matrix" is often used as a term of art in patents when describing computer memory. *See,*
9  *e.g., id.* at Ex. F-J. Given this evidence, Matrix's bare assertion that its marks are suggestive is unpersuasive.

11     A suggestive mark is one that "***subtly*** connote[s] something about [its] products." *Sleekcraft*, 599
12 F.2d at 349 (emphasis added). "A suggestive mark conveys an impression of a good but requires ***the exercise***
13 ***of some imagination*** and perception to reach a conclusion as to the product's nature." *Brookfield*
14 *Communications, Inc.*, 174 F.3d at 1058 n.19 (emphasis added). Here, Matrix has made no showing that
15 one's imagination is required to understand that the term matrix is referring to an arrangement of memory, since
16 "matrix," by definition, is an array of circuit elements or memory used in computers. This is even more true in
17 the case of the term "MATRIX MEMORY," which Plaintiff does not effectively deny is descriptive of its
18 product.

19     Further, Plaintiff's reliance on *Brookfield* is misplaced. Contrary to Plaintiff's assertion, *Brookfield*
20 does not establish that the Matrix's advertising efforts strengthen its marks. In *Brookfield*, the court concluded
21 that the mark was suggestive before considering the plaintiff's evidence concerning its advertising expenditures.
22 *See id.* at 1058 ("***Importantly***, [plaintiff's] trademark is not descriptive because it does not describe either the
23 software product or its purpose.") (emphasis added). Moreover, despite the plaintiff's evidence, the court in
24 *Brookfield* eventually concluded that the mark was weak. *Id.* Further, in *Sleekcraft*, the Ninth Circuit
25 rejected the contention that extensive advertising automatically transforms a suggestive mark into a strong one.
26 *See Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 605 (9th Cir. 1987) (citing *Sleekcraft*,

*United States District Court*
For the Northern District of California

599 F.2d at 350). Since the Court concludes, here, that Plaintiff's marks are descriptive, they are at the weakest end of the spectrum and Plaintiff's marketing efforts are therefore insufficient to bolster the strength of its marks.

Additionally, even if it is undisputed that Plaintiff produces a unique and award winning product, this is not the equivalent of establishing that it has highly recognized *trademarks*. The relevant criterion is whether the mark is actually viewed by the public as an indication of the product's origin. *Sleekcraft*, 599 F.2d at 349. Plaintiff's evidence does not establish this. For example, in one article, attached to the Steere Declaration as Exhibit A, the sole mention of Plaintiff is as follows "Winners of this year's [Innovation Awards] contest are: Susanne Paul, Silicon Laboratories, Atheros Communications; AMCC; Matrix Semiconductor; National Semiconductor; National Instruments; Virtual Silicon Technology; Knowles Acoustics; Enpirion; Power-One; Intel; Texas Instruments; Tektronix; Eric Bogatin, PhD, Synergetix; and Gene Garat, Mentor Graphics." Steere Decl. at Ex. A. This evidence does not conclusively establish that Plaintiff's marks are widely recognized. Accordingly, the Court finds that Plaintiff's marks are merely descriptive, and thus this *Sleekcraft* factor weighs heavily in favor of LSI.

### 2.  **Proximity of the Goods**

The second *Sleekcraft* factor concerns the proximity of the goods. "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350.

In support of its TRO application, Plaintiff argued that this factor was met because Matrix's and LSI's products are both electronic memories destined for use in consumer goods for text, voice, and video. LSI, on the other hand, asserted that Matrix's characterization of the goods was oversimplified, and that the types of memory are, in fact, very different. Specifically, LSI argued that the products are substantially different because LSI's product is for RAM, while Matrix's product is for OTP memory. In denying the TRO, the Court was persuaded by LSI's argument, and found that, while both the Matrix and LSI products involve memory, the two products differ significantly in function and therefore are not sufficiently related.

With respect to the instant motion, Plaintiff has not produced any new evidence that compels a different conclusion. LSI, on the other hand, has demonstrated that there is a "world of difference between the semiconductor chips produced by LSI and those produced by Matrix." Specifically, LSI points out that its RapidChip methodology is highly customized and costs customers between $100,000 to $300,000, whereas Matrix produces a "low-cost-per-bit write-once" memory product for use in high-volume consumer electronics and applications requiring inexpensive media. As even Martix admits, the focus here is on "whether the consuming public is likely somehow to associate [the plaintiff's] products with [the defendant's]." *See Brookfield*, 174 F.3d at 1056. Given the fundamental differences between the products, and given the sophisticated nature of this market, the Court concludes that this factor weighs only slightly in favor of Matrix.

### 3. Similarity of the Marks

The third *Sleekcraft* factor concerns the similarity of the marks. "Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599 F.2d at 351. "Although similarity is measured by the marks as entities, similarities weigh more heavily than differences." *Id.* With regard to the instant Motion, neither party appears to dispute that the marks are clearly similar in sight, sound, and meaning. Accordingly, this factor weighs in favor of Matrix.

### 4. Evidence of Actual Confusion

The fourth *Sleekcraft* factor concerns a finding of actual confusion in the marketplace. "Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352. Here, although Plaintiff vigorously contends that confusion is likely, it nevertheless concedes that there still is no evidence of actual confusion. Accordingly, this factor heavily favors LSI.

9

### 5. Marketing Channels

The fifth factor concerns the likelihood of confusion arising out of convergent marketing channels. "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.

In support of its TRO application, Matrix argued that the two companies use the same marketing channels and sell to the same customers. LSI, however, argued that the two products were in very different marketing channels. Specifically, LSI argued that the RapidChip Integrator2 from LSI, which is the product that contains MatrixRAM, costs up to $300,000 and caters toward computer networking clients that make products like network routers, network switches, network adapter cards and servers. In contrast, Matrix 3-D Memory is marketed as a secure, low-cost medium for distributing prerecorded video, music, games and software applications and as a potential rival to flash memory cards in digital cameras, MP3 players, and cellular phones.

In denying the TRO, the Court was persuaded by LSI's argument and found that this factor did not weigh in favor of Matrix. With respect to the instant Motion, Plaintiff now argues that this *Sleekcraft* factor has been satisfied by the fact that Matrix and LSI share common magazine and press sources. Specifically, Matrix asserts that both Matrix and LSI are mentioned in articles published by FSA and in Electronic Business Online reports and Consumer Electronics Show brochures. *See* Seger Decl. at Exs. D-G. The articles, however, appear to be standard industry publications that report on the activities and financial statements of numerous companies in the semiconductor industry. *See, e.g.,* Seger Decl. at Ex. D ("LSI Logic Corp. has raised revenue guidance for its first quarter of 2005 . . .") and ("Matrix Semiconductor Inc., a developer of three-dimensional semiconductor memory, has joined a partner program belonging to Symbian plc, a vendor of operating systems for mobile phones"). In the one article where LSI and Matrix are mentioned in conjunction, the discussion relates to LSI's capacity as a "fab," and does not mention LSI's memory products. *See* Seger Decl. at Ex. E. Therefore, Plaintiff's evidence does not shed any clarity on the instant matter, which is whether LSI and Matrix's marketing channels converge to such an extent that confusion in the marketplace is likely. If anything, the articles establish that marketplace confusion is *unlikely* due to the fact that the relevant industry media coverage is so thorough

10

and comprehensive. Accordingly, Matrix still has not demonstrated that this factor weighs in its favor.

### 6. Type of Goods and Degree of Purchaser Care

The sixth factor concerns the type of goods at issue and the degree of care a purchaser would likely use when selecting the product. "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Sleekcraft,* 599 F.2d at 353. "Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion [] may still be likely." *Id*.

In denying the TRO application, the Court was persuaded by LSI's argument that the high price of the goods, and the sophisticated nature of the customers, weighed heavily in favor of a conclusion that confusion was not likely. Plaintiff now argues that its customers will likely be confused by LSI's use of the term "matrix" and assume that Matrix has licensed its technology to LSI. Plaintiff has also submitted declarations from its founder and two of its executives, which purportedly demonstrate that the likelihood of confusion is heightened due to the fact that Matrix's technology is more complex than LSI suggests. The fact that Matrix's executives subjectively believe that confusion is likely, however, is not evidence that such confusion will, or probably will, occur. Moreover, it does not refute LSI's argument, which is premised on the notion that LSI's customers are large and sophisticated buyers who typically exercise a high degree of diligence in the evaluation and purchase of products. Accordingly, the Court finds that this factor weighs in favor of LSI.

### 7. Intent

The seventh *Sleekcraft* factor concerns LSI's intent. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft,* 599 F.2d at 354.

In denying Plaintiff's TRO application, this Court was not persuaded by Plaintiff's argument that LSI intentionally adopted Matrix's marks in order to capitalize on Matrix's goodwill. Indeed, Plaintiff offered little more than pure speculation that Defendant acted with such intent, which was effectively

11

1 refuted by LSI's express statement that the reason it chose to use the term "MatrixRAM" to describe its
2 product had nothing to do with Plaintiff's marks. With respect to the instant Motion, Plaintiff has not
3 provided the Court with any new evidence or argument in support of its theory that Defendant is
4 attempting to capitalize on its goodwill. In contrast, LSI has affirmatively stated, again, that the team
5 involved in selecting the name MatrixRAM was completely unrelated to the team that formerly worked
6 with Matrix. *See* Tillery Decl., Ex. C at ¶ 8. Accordingly, the Court finds that this factor favors LSI.

### 8. Likelihood of Expansion

The last *Sleekcraft* factor is the likelihood of expansion. The Court previously found unpersuasive Matrix's argument that it would be likely to expand its business into an area that directly competes with LSI. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may [] expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft,* 599 F.2d at 354. With respect to the instant Motion, Plaintiff repeats many of the same arguments that the Court has already rejected. For example, Plaintiff contends that its founders never intended the company to be limited to one-time programmable or read-only memory. *See, e.g.,* Lee Decl. at ¶¶ 3-5. However, Plaintiff also cites to certain recently filed patent applications relating to RAM technology, which at least suggest that Plaintiff may seriously be considering expanding its business into an area that would directly compete with LSI. *See* Toth Decl. ¶¶ 16-18; Declaration of Liza Toth I.S.O. Reply ("Reply Toth Decl") at Exs. Q-T.

Given Plaintiff's new evidence, Plaintiff has made a minimal showing that it may, at some point, expand its business into RAM technology, and therefore may directly compete with LSI. The Court therefore finds that this factor somewhat weighs in favor of Matrix.

### 9. Evaluation of the *Sleekcraft* Factors

Based on the eight *Sleekcraft* factors, Plaintiff has failed to establish a likelihood of success on the merits. At most, only three of the eight factors weigh in favor of Plaintiff, while the other five factors favor Defendant. Therefore, the Court finds that, at this point, there is not a likelihood of confusion between Matrix's and LSI's marks.

## B. Balance of Hardships

A preliminary injunction is appropriate only if there are serious questions going to the merits and the balance of hardships tips sharply in favor of the moving party. *Ocean Garden, Inc.*, 953 F.2d at 506. In the instant case, even assuming that serious questions exist going to the merits, the balance of hardship does not tip sharply in Matrix's favor.

For example, Matrix argues that it would face the following hardships if the preliminary injunction is not granted: (1) sophisticated high-tech companies would believe that there is no real trademark protection available; (2) LSI would be allowed to use Matrix's company name; (3) the $12.7 million Matrix has spent in marking its products would be lost; and (4) Matrix's goodwill could be tarnished. Thus, the essence of Matrix's argument is that its goodwill might be jeopardized if consumers think that "MatrixRAM" is made by Matrix or if consumers think that Matrix has licensed its technology to LSI. However, this argument depends entirely upon the assumption that there is a likelihood of confusion in the first place. Since Matrix has not demonstrated that such marketplace confusion is likely, Matrix's hardship argument fails.

LSI, on the other hand, argues that, if a preliminary injunction issues, its promotional efforts relating to the RapidChip Integrator2 will be lost and LSI's reputation will be tarnished in the eyes of its customers. LSI also points out that it announced its RapidChip Xtreme2 family of platform ASICs in March 2005 and publicly touted its RapidChip Integrator2 platform at a worldwide sales conference in April 2005. Thus, LSI would face serious ramifications if it were required to immediately cease using the term "MatrixRAM."

//

//

13

Since Matrix has not demonstrated that the balance of hardships tips sharply in its favor, this Court hereby DENIES Plaintiff's Motion for Preliminary Injunction.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Preliminary Injunction [Docket No. 29] is DENIED.

IT IS SO ORDERED.

Dated: 6-10-05

/s/ Saundra Brown Armstrong
SAUNDRA BROWN ARMSTRONG
United States District Judge